## BURMAN PROPERTIES, Inc., v. EISEMAN.

### No. 8485.

United States Court of Appeals,
District of Columbia.

Argued Dec. 16, 1943.

Decided Jan. 31, 1944.

Mr. Jacob N. Halper, of Washington, D. C., for appellant.

Mr. Charles D. Sanger, Jr., of Washington, D. C., for appellee.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

GRONER, C. J.

This case involves ownership of a parcel of land 16 by 100 feet, located on 17th Street, Northeast, in Washington City. The controversy arose in these circumstances:

On November 20, 1939, appellant, hereinafter called "Burman", owned a lot of land at the corner of Benning Road and 17th Street, known as parcel 150/29 and fronting 100 feet on Benning Road, with a depth of 115 feet on 17th Street. The property was in process of being improved by buildings for use as a gasoline station. On that date Burman leased the entire property to Standard Oil Company for a period of ten years and that Company took possession under its lease.

On January 20, 1940, Burman entered into a written contract with appellee Eiseman wherein Burman agreed to sell and Eiseman to buy the property at $32,000, the lease to be assigned to purchaser. The sale contract described the property as being the "N. W. corner Benning Rd. & 17th St., N. E. (100' x 99')." Eiseman had viewed the property and thought he was purchasing the entire site covered by the lease to the Oil Company. When he found that the sixteen-foot strip now in controversy was not to be included in the deed to him, he refused to proceed further in the transaction. As the result of this disagreement Burman proposed that the contract of sale be carried into effect and that the sixteen-foot strip be conveyed to Adlai Mann, Trustee; and this was done. The trust recited that a supplementary lease from Burman to the Oil Company had been prepared, by which the boundaries of the leased property were to be reduced to exclude the sixteen-foot strip, and that it was expected that this would be accepted by the Oil Company, pending which the Trustee would hold the sixteen-foot strip "until recordation of the supplementary lease," and then reconvey the strip to Burman Properties, Inc., "provided, however, that if the aforesaid supplementary lease shall not be executed and recorded among the Land Records of the District of Columbia within 11 months from date hereof then to forthwith convey said land to Theodore J. Eiseman, his heirs and assigns, without further consideration."

Admittedly, and as was found by the trial court, the supplementary lease was never executed, but on the 15th of May, 1941, thirteen months and four days after the execution of the trust, the Oil Company did execute and deliver to Burman a paper writing signed by its Vice President and attested by its Secretary, whereby it agreed to relinquish the sixteen-foot strip from the legal operation and effect of the lease, but upon condition "that the property hereby released shall not be used, for any other purpose than as a public alley, and that the abutting property shall have the right to use the same as a public alley, and that this covenant shall be construed and considered as a covenant running with the land."

The single question then is whether, in the facts stated, Eiseman is entitled to demand compliance with that provision of the

trust requiring a conveyance to him of the sixteen-foot strip. The trial court held that he was—and this appeal followed. We are of opinion the decision of the court was correct.

The trial court found that Eiseman in his original contract intended to purchase and was of opinion he had agreed to purchase the entire tract, 100 by 115 feet. When he found this was not Burman's understanding, he agreed to take title to the lesser amount on condition that Burman procured and recorded within eleven months a "supplementary lease" with the Oil Company, reducing the amount of the property leased to it, failing which, the strip was to be conveyed to him.

And as we have seen, the Oil Company never did accept the supplementary lease tendered by Burman, but three months after the expiration of the time limit named in the trust, proposed a remission by it of the sixteen-foot strip, conditioned upon the relinquished portion being converted into a public alley under a covenant running with the land. To this condition Burman has never agreed. Until he does, the Oil Company's lease remains as originally drawn. To give the paper writing of the Oil Company the effect claimed by Burman can only be done by making a new contract for the parties, which neither the trial court nor this court can do. As the matter stands, Burman, as we have seen, has entered into no new lease or agreement with the Oil Company, nor has he secured the consent of the Oil Company to a modification of its lease, as required by the trust agreement, except upon terms with which he is unwilling to comply. If the strip were reconveyed to Burman, we know of no way by which either the Oil Company or Eiseman could enforce the condition on which the Oil Company agreed to a remission of a part of its leased property. This certainly is not what Burman and Eiseman intended in creating the trust and the result would be to leave Eiseman wholly in the power of Burman in executing the terms of the lease to the Oil Company which he had assumed. While it is true that the rule in the interpretation of doubtful or ambiguous contracts is to give the language used by the parties the interpretation placed upon it by themselves, the rule is inapplicable here, both because there is no such mutual interpretation as conflicts with the view we have expressed, and because here the condition in the trust deed is clear and unobscure. It provided, as we have pointed out, for an agreement with the Oil Company whereby it would substitute for its present lease a new lease to a smaller area than that originally granted. But this arrangement the Oil Company has not confirmed, except upon a condition which Burman has not accepted. In this view, it is clear, we think, that there has not been a timely compliance with the agreement to procure and record a supplementary lease in accordance with the deed of trust. As a result, it follows that the duty of the Trustee was to convey the sixteen-foot strip to Eiseman, as the trust deed provided in that case should be done.

Affirmed.